UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET GUIZAR,

    Plaintiff,

v.

                        Case No. 13-10235
                        HON. TERRENCE G. BERG

PONTIAC, City of,
JASON TEELANDER, and
RYAN TERRY,

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION IN LIMINE

Plaintiff Margaret Guizar brings this civil rights action, under 42 U.S.C. § 1983 and various state laws, against Defendants the City of Pontiac, Michigan and Officer Jason Teelander and Sergeant Ryan Terry of the Pontiac Police Department. Plaintiff alleges that Defendants are liable for using excessive force and infringing her Fourth Amendment rights during her arrest at the Walton Quick Touch oil change shop in Pontiac, Michigan on January 18, 2011.

On December 3, 2013, Defendants filed motions for summary judgment. Those motions were fully briefed and the Court heard oral argument on March 3, 2014. Plaintiff has also filed a motion in limine to preclude the introduction of certain categories of evidence, should the matter proceed to trial. That motion has been fully briefed as well, but will be decided without the benefit of oral argument. *See* E.D. Mich. LR 7.1(f).

On some of Plaintiff's claims Defendants Teelander and Terry are both entitled to qualified and governmental immunity; likewise, there is no material question of fact as to whether the City of Pontiac provided its officers with adequate training and supervision. Therefore, summary judgment is appropriate on those claims. As to certain of Plaintiff's claims, however, Defendants are not entitled to qualified and governmental immunity, and a genuine issue of material fact exists that allows those claims to proceed. Accordingly, Defendants' Motions for Summary Judgment (Dkts. 29 & 30) are GRANTED IN PART and DENIED IN PART. Further, Plaintiff's Motion in Limine (Dkt. 33) is DENIED.

## I.  UNDISPUTED FACTS

Early in the evening on January 18, 2011, Plaintiff Margaret Guizar, then 63 years of age, brought her car to the Walton Quick Touch oil change shop ("Walton"), located at 289 West Walton Boulevard, in the City of Pontiac, Michigan. Dkt. 1, Compl., ¶9; Dkt. 29, MSJ at ¶4. Walton's employees performed various services on Plaintiff's automobile and, thereafter, a dispute arose regarding payment—Plaintiff asserts that Walton refused to give her a receipt for services rendered; Mohamad Berro, a Walton employee, asserts that Plaintiff refused to pay her bill and, even after having been offered a breakdown of the charges, refused to leave. Dkt. 1 at ¶10; Dkt. 29 at ¶¶5-8. The exact nature of the dispute between Plaintiff and Berro is immaterial; both of them eventually called the Pontiac Police Department for assistance. Dkt. 1 at ¶10; Dkt. 29 at ¶9.

Defendant Officer Teelander arrived on the scene and attempted to speak with Berro and Plaintiff regarding the incident. Dkt. 1 at ¶¶11-12; Dkt. 29 at ¶¶12-19. Although the parties strongly dispute who said what to whom and when, Plaintiff ultimately returned to her vehicle. Dkt. 1 at ¶14; Dkt. 29 at ¶22. There is disagreement among the parties as to what happened after Plaintiff returned to her vehicle. Plaintiff maintains that Officer Teelander began to scream at her for no reason as she was waiting for a receipt. Officer Teelander states that Plaintiff would neither pay for her oil change nor agree to leave the facility as requested. Officer Teelandar further states that Plaintiff's refusal to leave caused him to order Plaintiff to either leave or be arrested for trespass. It is undisputed, however, that at some point Officer Teelander forcibly removed Plaintiff from her vehicle and, with Sergeant Terry's assistance, applied handcuffs to Plaintiff and placed her under arrest. Dkt. 1 at ¶¶15-22; Dkt. 29 at ¶¶22-36.

## II. ANALYSIS

Officers Teelander and Terry have now have moved for summary judgment on the basis of both qualified and governmental immunity (Dkt. 29). The City of Pontiac has also moved for summary judgment (Dkt. 30). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of

3

the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).

Here, there is clearly a dispute over certain material facts, such that summary judgment would not be appropriate on Plaintiff's primary excessive force claim against Officer Teelander. As to Plaintiff's other claims however, Officer Teelander, Sergeant Terry, and the City of Pontiac are entitled to summary judgment in their favor.

## A. Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538–39. Further, these two these prongs need not be considered sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir.2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

### 1. *Plaintiff's Excessive Force Claim Against Defendant Teelander*

Count I of Plaintiff's Complaint alleges that Defendants' conduct subjected Plaintiff to excessive force. Under the Fourth Amendment, individuals have a right to be free of excessive force when police make an arrest or seizure. *See Graham v. Conner,* 490 U.S. 386, 394–95 (1989). This inquiry turns on the objective reasonableness of the officer's conduct in view of the facts and circumstances facing the officer. *Id.* at 397. In making this evaluation, courts look at: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Here, the low severity of the trespass offense, the lack of a safety threat posed by Plaintiff, and Plaintiff's refusal to leave the

premises collectively suggest, at most, that a minimal amount of force was appropriate.

Whether Defendant Teelander applied unconstitutionally *excessive* force in removing Plaintiff from her vehicle turns on what a reasonable officer would have done under similar circumstances. The question the Court must answer is whether the undisputed facts "demonstrate that a hypothetical reasonable officer" would have "known that his actions, under the circumstances, were objectively unreasonable," *Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000), not whether Defendant Teelander used the least intrusive means available. *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."); *see also, Illinois v. Lafayette*, 462 U.S. 640 (1983) (noting in the Fourth Amendment context that reasonableness of governmental activity does not hinge on existence of a less-intrusive alternative). Nevertheless, a plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999)); *see also Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996). Further, in determining whether there has been a violation of the Fourth Amendment, the Court does not consider the "extent of the injury inflicted" but whether an officer subjects a detainee to "gratuitous violence." *Morrison*, 583 F.3d

6

at 407 (citing *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x. 509, 513 (6th Cir. 2006)).

When evaluating the defense of qualified immunity on a motion for summary judgment, the court must adopt the plaintiff's version of the facts. *See Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012). Here, Plaintiff alleges that Defendant Teelander dragged Plaintiff out of her vehicle despite her informing him that she had degenerative arthritis, and then "violently smashed Plaintiff's head and body into the car" for no apparent reason. Dkt. 1, ¶20; *see also* Dkt. 29, Ex. F at 123-28. Further, Plaintiff went to St. Joseph Mercy hospital the day after the incident, and was seen in the Emergency Room where the physician reported a "final impression" that included both "neck strain," and "closed head injury." Dkt. 37, Ex. E.

Plaintiff's version of the events—that the responding police officer yanked a 63-year-old woman out of her car, ignored her pleas that she suffered from degenerative arthritis, and "violently smashed" her against her vehicle—may seem to defy logic and stand in stark contrast to every citizen's rightful expectation of appropriate police procedure, but at this stage of the litigation the Court must view the facts in the light most favorable to Plaintiff and may not engage in weighing the evidence or balancing the credibility of the witnesses. The Court recognizes that there is scant evidence in the record corroborating Plaintiff's version of the events, and that the Defendant officers maintain that Plaintiff was being entirely uncooperative and that some degree of force was necessary to remove her from the

7

premises. Even so, the Sixth Circuit has stated that the jury is the judge of credibility and, in light of the records of Plaintiff's treatment in the Emergency Room, the Court cannot conclude that Plaintiff's version of the events is "so utterly discredited by the record that no reasonable jury could believe it." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011); *see also Morrison*, 583 F.3d at 408.

Officer Teelander and Plaintiff have testified to largely dissimilar accounts of what happened when Plaintiff was removed from her vehicle. A question of fact exists as to what actually happened. If Officer Teelander's testimony is to be believed, he used an extremely limited amount of force in removing Plaintiff from her vehicle, which was entirely reasonable under the circumstances. If Plaintiff's version of the facts is accepted, i.e., that the officer physically dragged a disabled individual out of her seat and subsequently "slammed" her into her vehicle, then gratuitous violence like this would constitute an objectively unreasonable use of force. *See Carpenter v. Bowling*, 276 F. App'x 423, 428 (6th Cir. 2008) (quoting *Bouggess v. Mattingly*, 482 F. 3d 886, 888 (6th Cir. 2007) ("When the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity.")). Thus, Defendants' motion for summary judgment must be denied as to Plaintiff's excessive force claim against Defendant Teelander.

8

### 2. *Plaintiff's Handcuffing Claims*

Plaintiff also asserts that both Officer Teelander and Sergeant Terry employed excessive force when handcuffing Plaintiff. It is clearly established that the Fourth Amendment prohibits unduly tight handcuffing in the course of an arrest. *See Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993).

In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *See Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005). Even when a plaintiff makes such a showing, an officer may still be entitled to qualified immunity, depending on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *O'Malley v. City of Flint*, 652 F.3d 662, 671-672 (6th Cir 2011). Here, viewing the facts in the light most favorable to Plaintiff, it would still not have been clear to a reasonable officer in the position of Defendants that any alleged failure to immediately loosen Plaintiff's handcuffs was a constitutional violation. Plaintiff claims that she told the Officers that her handcuffs were too tight. Complaints of handcuff discomfort alone, without any specific request that the officers loosen the handcuffs, have been held by the Sixth Circuit to be insufficient support a claim that the officer should have known that failing to take immediate action to loosen the handcuffs violated

9

clearly established federal law. *O'Malley,* 652 F.3d at 672. In this case, as in *O'Malley*, Plaintiff never asked either Officer to *loosen* the handcuffs.[1]

As stated in *O'Malley,*

> Because "[o]ur precedents fail to notify officers that any response to a complaint of tight handcuffing other than an immediate one constitutes excessive force," *Fettes v. Hendershot,* 375 F. App'x 528, 533 (6th Cir 2010) and because "[i]n the absence of an obvious physical problem caused by the handcuffs or a plea by the defendant to loosen them, it is fair to ask how a reasonable officer should know that a problem has occurred," *Lyons,* 417 F.3d at 576, we hold that [Defendant's] failure to loosen O'Malley's handcuffs did not violate clearly established federal law.

652 F.3d at 672. "A constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are too tight is neither reasonable nor clearly established." *Fettes,* 375 F. App'x at 533.

Without needing to determine whether Plaintiff's handcuffs were fastened too tightly or whether her complaints as to their tightness were ignored, Sixth Circuit case law makes it clear that the absence of a request to loosen the handcuffs entitles both Officer Teelander and Sergeant Terry to qualified immunity on Plaintiff's handcuffing claim.

### 3. *Plaintiff's Remaining Fourth Amendment Claim Against Defendant Terry*

Apart from the claims related to her handcuffing, which were already discussed above, Plaintiff has failed to offer any evidence supporting an excessive

---

[1] In *O'Malley*, the Plaintiff complained to the arresting officer that the handcuffs were too tight, but did not ask that the handcuffs be loosened. The plaintiff claimed that he later asked a different officer to loosen the cuffs, but that request was never conveyed to the defendant. *O'Malley v. City of Flint*, 652 F.3d 662, 666 (6th Cir 2011).

10

force claim against Sergeant Terry individually. At most, she suggests that Sergeant Terry failed to intervene or prevent the excessive force that was allegedly exerted by Officer Teelander. Without a showing of direct responsibility, Sergeant Terry's mere presence during the arrest is insufficient to subject him to liability for excessive force. *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Since Defendant Terry did not actively participate in any alleged excessive force, nor supervise Officer Teelander, he may be held liable for "fail[ing] to act to prevent the use of excessive force" by Officer Teelander only if "(1) [Sergeant Terry] observed or had reason to know that excessive force would be or was being used, and (2) [he] had both the opportunity and the means to prevent the harm from occurring." *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) (internal quotation marks and citation omitted). Plaintiff has failed to allege facts necessary to make such a showing.

There is nothing in the record to suggest that Sergeant Terry had the opportunity or the means to prevent the alleged harm from occurring. Accepting Plaintiff's version of the events, it would have taken Officer Teelander only a few seconds to lift Plaintiff out of her vehicle and spin her around. These facts do not show that the incident lasted long enough for Defendant Terry to both perceive what was going on and intercede to stop it. *See Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (finding that the defendant did not have the opportunity to intervene given the rapid sequence of events); *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007) (finding that six or seven seconds was insufficient

11

time to compel intervention). Plaintiff has thus failed to create a question of fact as to any claim against Defendant Terry. As such, Defendant Terry is entitled to summary judgment on any remaining excessive force claims.

### 4. Plaintiff's Illegal Search and Seizure Claim

Count V of the Complaint alleges a claim for illegal search and seizure, in violation of the Fourth Amendment. It is unclear to the Court whether Plaintiff still intends to prosecute the portion of this claim related to her actual arrest, or whether Plaintiff is abandoning the entire claim. *See* Dkt 37, p. 7. Regardless, Defendants are entitled to qualified immunity on this claim.

Plaintiff is correct that the Fourth Amendment requires probable cause for an arrest. *See Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir.2003). The probable cause determination turns on whether "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). Likewise, the circumstances are viewed from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long,* 275 F.3d 544, 550 (6th Cir.2001) (citations omitted); *cf. Graham,* 490 U.S. at 396 (applying the same test in the context of judging the reasonableness of force used by officers). Here, Officer Teelander observed Plaintiff engaging in behavior that he reasonably believed violated the City of Pontiac's trespass ordinance. Further, qualified immunity "'gives ample room for mistaken

judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law,'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)), and applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *See* citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Regardless of how Plaintiff characterizes the events of January 18, 2011, Berro testified that he told Officer Teelander that Plaintiff had repeatedly refused to pay for services rendered and that he just wanted Plaintiff to leave (Dkt. 29, Ex. B, p. 52), such that it was not unreasonable under those circumstances for an officer to conclude that probable cause existed to arrest Plaintiff for trespass; thus, Defendants are entitled to qualified immunity on any illegal seizure claim that Plaintiff may still be intending to advance.

**B.    Governmental Immunity**

Counts II and IV of the Complaint allege claims of assault and battery, false arrest, and false imprisonment. As to these state law intentional tort claims, Defendants argue that they should be entitled to governmental immunity. Under Michigan law, a defendant is entitled to individual governmental immunity if:

> (a) [t]he acts were undertaken during the course of employment and the employee was acting, or reasonably believed he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cnty.*, 482 Mich. 459, 480 (2008).

First, under Michigan law an officer's decisions regarding an arrest are considered both discretionary and within the scope of their authority. *See id*; *Norris v. Lincoln Park Police Officers*, 292 Mich. App. 574, 579, *app. denied*, 490 Mich. 917 (2011). Thus, to defeat Defendants' claim of governmental immunity, Plaintiff must show that Defendants "utilized wanton or malicious conduct or demonstrated a reckless indifference to the common dictates of humanity." *Odom*, 482 Mich. at 475.

As to Plaintiff's false arrest and false imprisonment claims, there is nothing in the record to suggest that Plaintiff's arrest was a product of malice, and the Court has already concluded that it was reasonable to believe that probable cause existed at the time. Further, "[a] police officer would be entitled to immunity […] if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken." *Id*. at 482 (citing *Ross v. Consumers Powers Co.*, 420 Mich. 567, 363 N.W.2d 641, 667-68 (1984) (on rehearing)). Therefore, Defendants are entitled to governmental immunity as to Plaintiff's false arrest and false imprisonment claims.

With respect to Plaintiff's assault and battery claim, however, for the same reasons the Court denied Officer Teelander qualified immunity on Plaintiff's excessive force claim, the Court must also deny him governmental immunity on the assault and battery claim. In *Odom*, the court defined "willful and wanton misconduct" as that which "shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." 482 Mich. at 475. If Plaintiff's testimony is to be believed, i.e., that Officer

14

Teelander was aware she was disabled and still elected to drag her from her seat and slam her head and body into her vehicle, such conduct could be viewed by a jury as showing indifference to whether harm occurred. Officer Teelander is not entitled to governmental immunity on the assault and battery claim.

As to Sergeant Terry, there is nothing in the record to support an allegation of malice with respect to his limited involvement in Plaintiff's removal from her vehicle and subsequent handcuffing. Accordingly, Sergeant Terry is entitled to governmental immunity on Plaintiff's assault and battery claim.

**C.     Plaintiff's Claims Against The City of Pontiac**

Count VI of the Complaint asserts a municipal liability claim against the City of Pontiac for failure to adequately and properly train, supervise, review, or discipline its police officers or for permitting customs, practices, or policies in violation of § 1983.

In order to succeed on such a claim, a plaintiff must establish both (1) that his or her constitutional rights were violated and (2) that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *See Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

"That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v Harris,* 489 U.S. 378, 391 (1989). However, a systematic failure to train police officers

adequately is a custom or policy which can lead to municipal liability. *See Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *City of Canton*, 489 U.S. at 388). "The inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (internal quotation omitted). To establish deliberate indifference related to training, a plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). Plaintiff has not made such a showing.

Plaintiff also argues that this claim should survive because Pontiac did not engage of regular "performance reviews" of its officers, and that this constitutes a failure to supervise. *See Kammeyer v. City of Sharonville*, Case No. 01-00649, 2006 WL 1133241 (S.D. Ohio Apr. 27,2006) (citing *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1247-48 (6th Cir.1989)). While it may be true that Officer Teelander and Sergeant Terry received few, if any, performance evaluations while employed by the City of Pontiac, this fact does not mean that citizen complaints lodged against officers are not investigated or that officers are not subject to supervision and discipline. Plaintiff has not shown that Pontiac failed to take action or was otherwise deliberately indifferent to any unconstitutional conduct. *See Thomas v.*

*City of Chattanooga,* 398 F.3d 426, 433-34 (6th Cir 2005). Accordingly, the City of Pontiac is entitled to summary judgment on Plaintiff's municipal liability claim.

### D. Plaintiff's "Gross Negligence" Claim

Finally, Count III of the Complaint alleges that Defendants' conduct amounted to "gross negligence" that was the proximate cause of Plaintiff's injuries and which violated Defendants' duty to exercise reasonable care under MCL § 691.1407(2).

However, Michigan "has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004) (listing cases); *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010). Because Plaintiff's gross negligence claim is based entirely upon her allegations of intentional, tortious conduct, it fails to state a claim upon which relief may be granted.

### E. Motion in Limine

Plaintiff has also filed a Motion in Limine, seeking to exclude broad categories of otherwise admissible evidence on the basis of Federal Rule of Evidence 403. As the Sixth Circuit has previously stated, "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). This Court agrees.

Plaintiff's motion appears to be perfunctory in nature. Moreover, having reviewed Defendants' response to the motion, the Court is concerned that much of

the evidence Plaintiff seeks to preemptively exclude could be properly admissible depending on the surrounding circumstances, or may not even be offered by Defendants. Consideration of this issue is premature; the parties are encouraged to discuss these issues and reach an agreement prior to trial.

If, at the time of the Final Pretrial Conference, either party wishes to challenge the admissibility of certain identified exhibits or testimony to be offered, the Court will entertain motions in limine to exclude such evidence at that time. At this time, however, Plaintiff's Motion in Limine is DENIED.

### III. CONCLUSION

For the reasons stated above, Defendants' Motions for Summary Judgment (Dkts. 29 & 30) are **GRANTED IN PART** and **DENIED IN PART.** Specifically, the individual Defendants' motion is **DENIED** as to Count I (Fourth Amendment – Excessive Force) and Count II (Assault and Battery) against Defendant Jason Teelander, with the notable exception of any portion of those Counts concerning overly tight handcuffs, for which Defendants' motion is **GRANTED**.

As to all other Counts, Defendants' motions are **GRANTED**. Accordingly, any and all claims against Defendants Ryan Terry and the City of Pontiac are **DISMISSED WITH PREJUDICE**.

Further, Plaintiff's Motion in Limine (Dkt. 33) is **DENIED**.

**SO ORDERED**.

Dated: September 9, 2014  s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically submitted on September 9, 2014, using the CM/ECF system, which will send notification to all parties.

                                                 s/A. Chubb
                                                 Case Manager